04-0007-ag (Lead), 05-3251-ag (Con)
Mustafaj v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 9th day of March, two thousand ten.

Present:  JON O. NEWMAN,
          CHESTER J. STRAUB,
          ROBERT A. KATZMANN,
                    *Circuit Judges*.

_____

PJETER MUSTAFAJ,

                    *Petitioner*,

                              Nos. 04-0007-ag, 05-3251-ag

          - v.-

ERIC H. HOLDER, JR., Attorney General of the United States,[*]

                    *Respondent*.

_____

For Petitioner:          ALAN MICHAEL STRAUSS (Stanley H. Wallenstein, *on the brief*), New York, N.Y.

For Respondent:          ADA E. BOSQUE, Attorney (Tony West, Assistant

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric. H. Holder, Jr. is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

Attorney General, William C. Peachey, Assistant Director, *on the brief*), Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C.

Petition for review of a decision of the Board of Immigration Appeals.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED** in part and **DENIED** in part.

Petitioner Pjeter Mustafaj ("Mustafaj"), petitions this Court for review of a decision of the Board of Immigration Appeals ("BIA") entered January 29, 2009, finding Mustafaj removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) based on two convictions of "crimes involving moral turpitude" ("CIMT"). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Mustafaj is a lawful permanent resident who entered this country in 1962 at the age of five with his parents, ethnic Albanians who were fleeing communism. He has resided in this country for approximately 48 years, and English is his only language.

In 1977, Mustafaj was convicted of attempted criminal possession of stolen property in the third degree, pursuant to N.Y. Penal Law § 165.40. In 1984, Mustafaj was convicted of third-degree assault, pursuant to N.Y. Penal Law § 120.00(1). Based on these 1977 and 1984 convictions, a Notice to Appear in Removal Proceedings was issued to Mustafaj on October 9, 2002, charging that he was removable for having been convicted of two CIMTs pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).

At his initial hearing before the IJ, Mustafaj conceded essentially all of the factual allegations against him, but argued that his assault conviction was not for a CIMT, and that he

2

thus was not deportable for having been convicted of two such crimes. Mustafaj also requested that, in the event that the IJ determined that he was deportable, he receive a cancellation of removal pursuant to 8 U.S.C. § 1229b(a).

The IJ found that third-degree assault under New York law was not a CIMT and therefore did not render Mustafaj removable. In the alternative, the IJ ruled that Mustafaj was eligible for, and deserved, discretionary cancellation of removal. The BIA reversed, holding that Mustafaj's assault conviction was a CIMT and that he was categorically ineligible for cancellation.

Mustafaj challenged both of these holdings before this Court, and the government conceded that the BIA erred in holding that Mustafaj was ineligible to apply for discretionary cancellation. Given the government's concession, and in light of "the distinct possibility that Mustafaj may obtain cancellation pursuant to the IJ's earlier favorable weighing of his equities," we remanded the case on the cancellation issue and declined to reach the issue of Mustafaj's removability. *See Mustafaj v. Gonzales*, 179 F. App'x 762, 764 (2d Cir. May 3, 2006) (summary order). In so doing, we reminded counsel, as well as the BIA, of the reality of Mustafaj's situation:

> [D]espite his having served a criminal sentence of only eight months for a misdemeanor committed in 1981, despite his long record of stable residence and gainful employment, and despite his having initially prevailed before the IJ, Mustafaj [had, by then,] suffered three-and-a-half years of DHS detention, partly due to conceded BIA error.

*Id.* We retained jurisdiction over the issue of Mustafaj's removability, however, in the event that it remained after remand. *Id.*

Upon remand, both parties submitted supplemental briefing, and the BIA, in turn, remanded to the IJ for additional fact-finding regarding Mustafaj's prior refusal to testify before a

3

grand jury in an unrelated proceeding, noting that Mustafaj's refusal to do so "bears upon his fitness for a discretionary grant" of cancellation. The IJ conducted an evidentiary hearing on that issue, and, by order dated June 18, 2007, terminated the proceedings based on the government's failure to establish Mustafaj's removability. In his oral decision explaining the reasons for that order, the IJ noted that he had already determined that Mustafaj was not removable on any of the charges brought by the government, and that this Court had retained jurisdiction as to that issue. The IJ further observed that while he considered Mustafaj's refusal to testify "to be a substantial adverse factor" weighing against cancellation, it was "clear" that Mustafaj's refusal was "based primarily, if not entirely, on the advi[ce] of his counsel." After taking into account Mustafaj's "stable" residence and employment, the effect of removal upon Mustafaj's family and Mustafaj himself, "who has known no other country since the age of five and cannot speak the language of any country to which he might be removed," the IJ concluded that the positive equities "far outweigh[ed]" the adverse factors and granted Mustafaj's application for cancellation of removal.

The government appealed the IJ's decision, and on January 29, 2009, the BIA, in a divided decision, sustained the appeal and ordered Mustafaj removed to Albania. In so doing, the BIA reaffirmed its view that N.Y. Penal Law § 120.00(1) constitutes a CIMT, thus rendering Mustafaj removable. Moreover, the BIA once again reversed the IJ's grant of cancellation of removal, concluding that Mustafaj's refusal to testify amounted to a refusal to cooperate, and rejecting Mustafaj's explanation for his refusal as "contradictory on its face." The dissenting board member briefly noted that the IJ "correctly identified and analyzed the relevant factors in reaching a determination to exercise his discretion favorably" to Mustafaj, and stated that she would uphold the IJ's grant of cancellation.

4

On February 19, 2009, Mustafaj's counsel timely requested that this case be returned to this Court, and we are now squarely presented with the question that we previously declined to reach, *viz.*, whether the BIA erred in concluding that a conviction for third-degree assault under New York law constitutes a conviction for a CIMT.

At the outset, we reject the government's argument that Mustafaj failed to exhaust his administrative remedies with respect to his removability. As noted, Mustafaj argued before the IJ that third-degree assault is not a CIMT, and likewise raised this claim before the BIA. When we remanded this case to the BIA, we expressly "retain[ed] jurisdiction over [the issue of Mustafaj's removability], in the event it remain[ed] after remand." *Mustafaj*, 179 F. App'x at 764. Thereafter, on remand, the BIA emphasized that its "finding that the respondent's assault conviction was a [CIMT] is not at issue in this remand, as the Circuit Court has retained jurisdiction over that matter pending the outcome of this case on remand." Thus, Mustafaj had no reason (or need) to raise the issue on remand, and all of Mustafaj's arguments as to his removability remained before this Court. And even assuming that Mustafaj was required, and failed, to raise this issue on remand, we nevertheless may consider it here. *See Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296-97 (2d Cir. 2006) (per curiam) (where the BIA addresses claims or issues not raised by a petitioner, those issues are considered exhausted and may be reviewed by this Court).

"Because the BIA has expertise applying and construing immigration law, we afford *Chevron* deference to its construction of undefined statutory terms such as 'moral turpitude.'" *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005). We review *de novo*, however, "the BIA's finding that a petitioner's crime of conviction *contains* those elements which have been properly found

5

to constitute a CIMT." *Id*. In assessing whether a particular crime of conviction is a CIMT, this Court (like the BIA) generally does not look at the particular facts underlying the petitioner's conviction, but instead takes a "categorical approach," focusing on "the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Id.* (quotation marks omitted); *see Almeida v. Holder,* 588 F.3d 778, 785 (2d Cir. 2009) (noting that the categorical approach applies in those cases where "every set of facts violating a statute . . . satisf[ies] the criteria for removability," but that a "modified categorical approach" may apply in other circumstances).

On remand, the BIA reaffirmed its view that a conviction for third-degree assault under section 120.00(1) of the New York Penal Code constitutes a CIMT based on the BIA's decision in *In re Solon*, 24 I. & N. Dec. 239 (BIA 2007). In that case, the BIA observed that section 120.00(1) requires, at a minimum, "the specific intent to cause physical injury," 24 I. &. N. Dec. at 243, together with "proof of actual physical injury" as evidenced by "a certain objective level of pain (or impairment of physical condition)," *id.* at 244. The BIA then concluded that section 120.00(1) constitutes a CIMT, because, at a minimum, it encompasses "injurious conduct that reflects a level of depravity or immorality appreciably greater than that associated with [simple battery]." *Id.* at 245.

Mustafaj, through counsel, presents a variety of arguments, some of which are quite strong, as to why this conclusion is erroneous. However, based on precedent and applicable standards of review, we must reject Mustafaj's arguments.

The BIA has interpreted CIMTs to refer to conduct that is "base, vile, or depraved and contrary to the accepted rules of morality and the duties owed between persons or to society in

general." *In re Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001). The BIA has also explained that a crime involves moral turpitude if "the act denounced by the statute grievously offends the moral code of mankind and would do so even in the absence of a prohibitive statute." *Matter of Serna*, 20 I. & N. Dec. 579, 584 n.8 (BIA 1992) (internal quotation marks omitted). "An evil or malicious intent is said to be the essence of moral turpitude," *Matter of Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980), and a finding of moral turpitude thus typically "requires that a perpetrator have committed the reprehensible act with some form of scienter," *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 706 (BIA 2008). Accordingly, crimes committed intentionally or knowingly generally have been found to be CIMTs, *see, e.g.*, *Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 618 (BIA 1992), as have crimes committed recklessly in certain aggravated circumstances, *see, e.g.*, *Matter of Medina*, 15 I. & N. Dec. 611, 614 (BIA 1976).

"[A]ssault may or may not involve moral turpitude," *In re Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996), depending on "an assessment of both the state of mind and the level of harm required to complete the offense." *Solon*, 24 I. & N. Dec. at 242. At one end of the spectrum, "[s]imple assault is not considered to be a crime involving moral turpitude," *Fualaau*, 21 I. & N. Dec. at 475, because it requires "general intent only and may be committed without the evil intent, depraved or vicious motive, or corrupt mind associated with moral turpitude," *Solon*, 24 I. & N. Dec. at 241 (noting that simple assault typically encompasses "de minimis conduct or harm, such as offensive or provocative physical contact or insults, which is not ordinarily considered to be inherently vile, depraved, or morally reprehensible"). At the other end of the spectrum, certain types of aggravated assault, such as "assault with a deadly weapon," have "been held to be [] crime[s] involving moral turpitude." *Fualaau*, 21 I. & N. Dec. at 477. It is the grey area

7

between these two extremes in which this case falls.

N.Y. Penal Law § 120.00(1), the statute at issue here, provides that "[a] person is guilty of assault in the third degree when[,] with intent to cause physical injury to another person, he causes such injury to such person or to a third person." Physical injury is defined to include an "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). Although the statutory text does not require a specific threshold degree of physical harm to have occurred, the New York Court of Appeals has emphasized that "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives[] are not within the definition of the statute." *People v. Henderson*, 92 N.Y.2d 677, 680 (1999) (internal quotation marks omitted). To that end, New York state courts have consistently stated that a certain level of harm is necessary before a defendant may be convicted of third-degree assault under N.Y. Penal Law § 120.00(1), and have dismissed cases that do not rise to that level. *See*, *e.g.*, *Matter of Phillip A.*, 49 N.Y.2d 198, 200 (1980) ("[W]hile the question whether the 'substantial pain' necessary to establish assault in the third degree has been proved is generally a question for the trier of fact, . . . there is an objective level . . . below which the question is one of law, and the charge should be dismissed."); *People v. Jimenez*, 55 N.Y.2d 895, 896 (1982) ("Testimony that the victim suffered a one centimeter cut above her lip, without more, was not adequate to prove that the victim suffered either 'substantial pain' or 'impairment of a physical condition.'") (internal citation omitted); *People v. Toure*, 10 Misc. 3d 1054(A), at *2 (N.Y. Crim. Ct. 2005) (holding that defendant, in punching a police officer in the back and in causing the officer to fall to the ground by jumping on him, had not caused sufficient injury to warrant a third-degree assault charge); *see also People v. Martini*, 62 Misc. 2d 544, 545 (N.Y. Crim. Ct. 1970) (noting that under the New

8

York Penal Law, "minor assaultive conduct or petty batteries, i.e., so-called 'technical assaults' are now covered by the offense of harassment," as opposed to the offense of third-degree assault).

Thus, New York case law makes clear that section 120.00(1) requires a specific intent to cause injury, together with a certain degree of physical harm more serious than mere "petty slaps, shoves, or kicks," before a defendant can be convicted of third-degree assault. On *de novo* review, we see no error in the BIA's conclusions in this respect. With respect to the BIA's conclusion that assault offenses with specific intent and this degree of harm constitute CIMTs, the BIA emphasized that although "the presence of an aggravating factor can be important in determining whether a particular assault amounts to a crime involving moral turpitude, . . . the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction." *Solon*, 24 I. & N. Dec. at 245. Thus, according to the BIA, moral turpitude inheres in intentional assaults that are intended to cause, and do cause, meaningful physical injury or substantial pain to another person, regardless of the presence or absence of an aggravating factor, including third-degree assault under New York law. *Id.* at 246.

Accordingly, in the end, our inquiry here centers on the reasonableness of the BIA's conception of the term "moral turpitude," an inquiry that is necessarily and unavoidably constrained by the principles of *Chevron* deference. *See*, *e.g.*, *INS v. Aguirre-Aguirre,* 526 U.S. 415, 424-25 (1999); *Gill*, 420 F.3d at 89. Pursuant to these principles, "we need only conclude that [the BIA's] interpretation is reasonable and that it considered the matter in a detailed and reasoned fashion." *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) (internal quotation marks omitted). To be sure, we question the wisdom of deeming a conviction for third-degree assault

9

under New York law to be a CIMT, particularly given the absence of any aggravating factors in the statute. Notwithstanding these reservations, however, we cannot say that it was unreasonable for the BIA, upon careful consideration, to conclude that an intentional assault that is intended to and does cause more than a *de minimis* level of physical harm, is "contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Torres-Varela*, 23 I. & N. Dec. at 83.

Having concluded, under the applicable standard of review, that the BIA did not err in finding Mustafaj removable for having been convicted of two CIMTs, we turn to Mustafaj's remaining argument that he nevertheless is entitled to cancellation of removal. When this case was previously before us, we emphasized Mustafaj's "long record of stable residence and gainful employment," together with the fact that he only speaks English and has not left this country since his arrival in 1962. The IJ granted Mustafaj's application for cancellation of removal based largely on these factors. The BIA reversed this decision, however, concluding that notwithstanding these positive equities, Mustafaj's refusal to testify amounted to a refusal to cooperate, and rejecting Mustafaj's explanation for his refusal as "contradictory on its face."

Generally speaking, the BIA is not permitted to engage in independent factfinding or consider evidence that is not already in the record. *See* 8 C.F.R. § 1003.1(d)(3)(iv). The BIA must accept the factual findings of the IJ, including findings as to the credibility of testimony, unless the BIA determines that such findings are clearly erroneous. *Id.* § 1003.1(d)(3)(i). "Although any reversal by the BIA of an IJ's discretionary determination must involve consideration of the underlying facts," *Wallace v. Gonzales*, 463 F.3d 135, 141 (2d Cir. 2006), it is a different matter when the BIA necessarily relies on facts that were contested by the parties

10

and expressly not found by the IJ. Moreover, while the BIA reviews *de novo* whether the IJ's decision to deny discretionary relief was warranted based on the record, the BIA reviews the IJ's fact-findings, "including findings as to the credibility of testimony," under the clearly erroneous standard. 8 C.F.R. § 1003.1(d)(3)(i) & (ii).

Here, Mustafaj testified before the IJ that he had no information for the grand jury, and that his moral beliefs prevented him from offering testimony. He also testified that his attorney advised him to invoke the Fifth Amendment. The IJ largely credited this testimony, concluding that it was "apparent" that Mustafaj's "refusal to testify before the Grand Jury was based primarily, if not entirely, on the advi[c]e of his counsel." The IJ made no finding that Mustafaj's refusal to testify amounted to an intentional refusal to cooperate, nor did he conclude that Mustafaj's testimony was "contradictory on its face." The BIA's conclusions in this respect thus did not amount to a mere weighing of the equities, but instead factual conclusions. Further, to the extent that the BIA disagreed with the IJ's conclusion that Mustafaj's refusal to testify was based primarily if not entirely on the advice of counsel, there is no indication that it found that finding to be clearly erroneous.

As noted, the BIA reversed the IJ's grant of cancellation of removal in a divided decision. Accordingly, because we cannot "'confidently predict' that the agency would reach the same conclusion absent the identified errors," *Li Hua Lin v. United States Dep't of Justice*, 453 F.3d 99, 108 (2d Cir. 2006) (footnote omitted), we are compelled to remand to the BIA.

We reiterate once again the sympathetic nature of Mustafaj's case. He entered this country lawfully, has remained here continuously for approximately forty-eight years, and faces the prospect of removal to a country that he has not known since the age of five and whose

11

language he does not speak. In light of these, and other circumstances, if the BIA again rules against Mustafaj, the government might consider whether "[p]erhaps he is a candidate for a private bill," or perhaps the government "might simply exercise its discretion to permit [him] to remain here along with the millions of others who are not removed despite their lack of a lawful status." *Rotimi v. Holder*, 577 F.3d 133, 139 (2d Cir. 2009) (Newman, *J.*, concurring).

For the reasons set forth above, the petition for review is **GRANTED** in part and **DENIED** in part. We **VACATE** the BIA's decision insofar as it reversed the IJ's grant of cancellation of removal, and **REMAND** to the BIA for further proceedings in conformance with this decision. As we have completed our review, any pending motion for a stay of removal in this petition is **DENIED** as moot.

This panel will reassert jurisdiction to rule, if necessary, upon the issue of Mustafaj's request for cancellation of removal. *See Shi Liang Lin v. DOJ*, 416 F.3d 184, 192 (2d Cir. 2005) (retaining jurisdiction to decide issues on appeal following remand to the BIA); *cf. United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994) (retaining jurisdiction while remanding to the district court for supplementation of the record). Although the mandate shall issue forthwith, Mustafaj may return the case to this Court by notifying the Clerk of the Court within thirty days of entry of a final BIA order on remand. Such notification will not require the filing of a new notice of appeal. If notification occurs, the matter will be referred automatically to this panel for disposition.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK