# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 19, 2010

Lyle W. Cayce
Clerk

No. 09-60597

LIBBY ROMERO BIANCO,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

---

Petition for Review of an Order of the
Board of Immigration Appeals

---

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Libby Bianco petitions for review of the Board of Immigration Appeals'
("BIA") affirmance of a final order of removal. Bianco contends the BIA
improperly searched outside the records of her prior state court conviction to
determine she had committed a "crime of domestic violence" under 8 U.S.C. §
1227(a)(2)(E)(i). The petition is DENIED.

## I. STATEMENT OF FACTS

Bianco is a citizen of Venezuela who was first admitted to the United
States as a nonimmigrant in 2001. She became a lawful permanent resident on
January 10, 2005.

No. 09-60597

On November 21, 2007, the Department of Homeland Security ("Department") filed a Notice to Appear for Bianco. It alleged that her "admission" – a term we will explain – to the United States occurred in 2005 when she became, conditionally, a lawful permanent resident. It also alleged that on October 27, 2006, she was convicted in Pennsylvania of aggravated assault and possessing an instrument of crime, *i.e.*, something made or adapted for criminal use, with intent to employ it criminally. *See* 18 PA. CONS. STAT. §§ 907 & 2702(a)(4). Bianco was charged with removability as an alien convicted of a crime involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I).

In a hearing before an Immigration Judge ("IJ"), Bianco admitted her nationality and citizenship but denied the other factual allegations in the Notice to Appear. She also denied the charge of removability. The Department submitted evidence that she had been convicted in Pennsylvania state court of aggravated assault for stabbing Mark Bianco in April 2006. Libby Bianco would be removable if she committed a crime of moral turpitude within five years "after the date of admission." *Id.* The IJ determined that because the aggravated assault was committed within five years of the date of Bianco's adjustment of status in 2005, she was removable as charged.

On appeal, the BIA applied a decision of this court that an adjustment of status by an alien who was previously admitted as a nonimmigrant is not an "admission" under the immigration laws. *Martinez v. Mukasey*, 519 F.3d 532, 542-46 (5th Cir. 2008). Because there was no evidence in the record concerning the date of Bianco's admission for purposes of the five-year statutory period, the BIA remanded for the IJ to determine the date of Bianco's admission.

Perhaps aware that the five-year requirement for removal based on a crime of moral turpitude could not be met, on remand the Department filed a second charge of removability. Newly alleged was that Bianco was removable as an alien convicted of a crime of domestic violence after admission, which does

2

No. 09-60597

not have the five-year limitation. *See* 8 U.S.C. § 1227(a)(2)(E)(i). Evidence that the victim of Bianco's assault was her husband derived from records of the Pennsylvania proceedings, and included the police criminal complaint and an affidavit of probable cause.

The IJ found on remand that Bianco had been admitted on February 10, 2001. The aggravated assault was committed in April 2006, more than five years after her admission. Therefore, the crime of moral turpitude was too dated to use as a basis for removal.

The IJ then rejected Bianco's argument that the Department could not file supplemental charges after a remand from the BIA. The IJ also held that the Department met its burden to prove Bianco was convicted of aggravated assault, a crime that satisfied the definition of a "crime of violence" under 18 U.S.C. § 16(a). The record was found to contain sufficient evidence that Bianco's crime was committed against her spouse, even though the victim being her husband was not an element of the offense. The IJ held that evidence from outside the record of the criminal proceeding could be used to determine the relationship between Bianco and her victim. Consequently, the IJ ordered Bianco removed for having committed a crime of domestic violence.

The BIA affirmed. Bianco now seeks reversal.

## II. DISCUSSION

The only issues on appeal are legal ones. We review the BIA's conclusions of law *de novo*. *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007).

Bianco alleges two points of error in the BIA's dismissal of her appeal. First, she contends the BIA erred in concluding that her conviction for aggravated assault constituted a crime of *domestic* violence pursuant to Section 1227(a)(2)(E)(i). She complains the BIA either should have limited its review to the statutory elements of her prior conviction or, at most, to a small category of evidence that would not include the affidavit of probable cause and the criminal

3

complaint.  To be clear, Bianco does not deny that her husband was the victim of the assault.  The issue is whether proof of the domestic relationship must appear in certain limited records of the conviction.

In her second point of error, Bianco insists that the Department ought not have been permitted to lodge an additional charge after the case was remanded by the BIA.  We now consider the arguments in that order.

A.    *Evidence used to determine the domestic nature of her crime*

Bianco argues that the evidence used to prove her marriage to the victim of her assault was inadmissible.  She urges us to apply to this fact issue the principle that evidence supporting the details of a prior conviction must in some circumstances come solely from the statute of conviction or, if the statute contains multiple offenses, from certain other documents contained in the record of the conviction.  *See Larin-Ulloa v. Gonzales*, 462 F.3d 456, 463-64 (5th Cir. 2006).  The "categorical approach" of examining only the statute of conviction, and the "modified categorical approach" of looking at a limited set of documents apart from the conviction itself, apply in several contexts when a prior conviction has relevance to a current order against the individual.  *Id.*

We have applied the modified categorical approach to determine whether a prior offense committed by an alien was a crime involving moral turpitude. *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006).  We wrote that our search is for the "inherent nature of the crime, as defined in the statute . . . rather than the circumstances surrounding the particular transgression." *Id.* (quoting *Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982)).  When the statute of conviction has discrete subsections, some involving crimes of moral turpitude and others not, we look at the record of conviction to determine which subsection applied.  *Id.* Appropriate documents to examine include the charging document such as an indictment, a written plea agreement, a plea colloquy transcript, and any factual finding explicitly made by the trial judge and assented to by the

defendant. *Nolos v. Holder*, 611 F.3d 279, 285 (5th Cir. 2010). These limitations are drawn from Supreme Court authority that applied the Armed Career Criminal Act. *Shepard v. United States*, 544 U.S. 13, 15-16 (2005) (applying 18 U.S.C. § 924(e)). To prove the nature of a prior relevant conviction under that Act, the Court permitted introduction only of the "records of the convicting court approaching the certainty of the record of conviction," as such documents avoid mini-trials on the issues and satisfy concerns that the relevant facts have been found by a jury or were confirmed by the defendant. *Id.* at 23-26.[1]

Bianco argues the same limited evidence must be the source of any proof that her conviction was for domestic violence. The immigration statute in question provides that an "alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable." 8 U.S.C. § 1227(a)(2)(E)(i). The statute also defines "crime of domestic violence" to be:

> any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabitating with or has cohabitated with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs . . . .

*Id.*

Bianco does not challenge that her aggravated assault conviction is a crime of violence. She does argue, though, that because nothing in the record of conviction identifies the victim as her husband, the offense cannot qualify for these purposes as one of domestic violence.

---

[1] The Supreme Court recently considered whether prior multiple misdemeanor drug offenses were collectively an "aggravated felony" that would prevent a lawful permanent resident from applying for discretionary cancellation of removal. *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2580 (2010). The Court found the operative factual question to be whether the person had been convicted of a misdemeanor drug possession offense that had as an element the fact of a prior misdemeanor possession offense. *Id.* at 2589.

The Pennsylvania statute under which Bianco was convicted provided seven alternative methods by which the offense could be committed.  18 PA. CONS. STAT. § 2702(a)(1) - (7).  Bianco was charged under subsection (4), which provides that a person who "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon" is guilty of aggravated assault.  *Id.* at § 2702(a)(4).  This subsection was cited in the charging instrument, and the charge itself tracked the statutory language.  Focusing on the specific relevant elements of this Pennsylvania statute does not bring into view any required domestic relationship between perpetrator and victim. Thus, neither the categorical nor the modified categorical approach give the answer to whether Bianco committed a crime of domestic violence.

Our answer is not found in any precedent in this circuit.  The Ninth Circuit has dealt with the same issue of categorizing a prior state criminal conviction under the Section 1227(a)(2)(E) definition of a crime of domestic violence.  *See Tokatly v. Ashcroft*, 371 F.3d 613 (9th Cir. 2004).  It determined that a categorical or modified categorical approach must be applied strictly to the entire definition of a crime of domestic violence.  *Id.* at 620-21.  The court held that where the domestic relationship is not apparent from the statutory definition itself or from a limited record of conviction, the court is "compelled to hold that the government has not met its burden of proving that the conduct of which the defendant was convicted constitutes a predicate offense, and the conviction may not be used as a basis for removal."  *Id.*

The Ninth Circuit's resolution of this issue is entitled to respectful consideration.  We must, though, view that court's analysis in light of two subsequent Supreme Court decisions that arguably opened the door to a new "circumstance-specific" approach.  *See United States v. Hayes*, 129 S. Ct. 1079 (2009); *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009).  In *Nijhawan*, the Supreme Court examined a statute declaring that an "alien who is convicted of an

aggravated felony at any time after admission is deportable." 8 U.S.C. §
1227(a)(2)(A)(iii). The relevant definition of "aggravated felony" was "an offense
that . . . involves fraud or deceit in which the loss to the victim or victims exceeds
$10,000." *Nijhawan,* 129 S. Ct. at 2297 (quoting 8 U.S.C. § 1101(a)(43)(M)(i)).
At issue was whether the amount-of-loss language referred to an element that
could be proved by information extrinsic to the statute of conviction. *Id.* at 2298.
The Court concluded that it referred not to a necessary element but to the
particular circumstances in which the offense occurred on a particular occasion.
*Id.* Thus, instead of confining itself only to the statute to determine whether the
prior conviction qualified as a predicate offense, the Court "look[ed] to the facts
and circumstances underlying an offender's conviction." *Id.* at 2299.

The Court's embrace of a "circumstance-specific" approach was motivated
by a recognition that the immigration statute differed from the Armed Career
Criminal Act, the statute at issue in the cases that announced both the
categorical and the modified categorical approach. *Id.* at 2300; *see Taylor v.
United States*, 495 U.S. 575 (1990); *Shepard*, 544 U.S. at 16. The Armed Career
Criminal Act referred to generic crimes, such as "burglary, arson, or extortion";
the "aggravated felony" statute referred to circumstances-specific offenses, such
as a particular act "committed for commercial advantage." *Nijhawan*, 129 S. Ct.
at 2300-01 (emphasis omitted).

The *Nijhawan* Court concluded that applying a strict categorical approach
would leave the statute little meaningful application, as there were few widely
applicable fraud statutes specifying a threshold amount for conviction. *Id.* at
2301. Additionally, a majority of states had no major fraud or deceit statute
with a monetary threshold when Congress passed the law. *Id.* at 2302.

In determining whether the conviction involved the requisite amount of
loss, the Court emphasized the importance of "fundamentally fair procedures."
*Id.* at 2303. The Court explained its conclusion in several ways. Because the

proof of an amount of loss was not generally necessary in the relevant prior convictions but was necessary for the immigration statute, the respondent must be given an opportunity to contest evidence of the amount. *Id.* The Court noted that the categorical approach was developed to determine which of potentially numerous statutory elements applied to the prior conviction. *Id.* Conversely, Congress had determined that the amount of loss in a fraud conviction would be relevant for purposes of removal even though the relevant amounts would rarely be an element in the statute of conviction. *Id.* at 2301-03. The Court also distinguished the Armed Career Criminal Act cases on the fact that the removal proceedings were civil in nature, and proof beyond a reasonable doubt was not required. *Id.* at 2303.

Based on these considerations, the Court allowed the use of "earlier sentencing-related material" such as "defendant's own stipulation" and "[t]he court's restitution order." *Id.*

The other recent Supreme Court decision relevant here examined a statute that prohibited those convicted of a misdemeanor crime of domestic violence from possessing firearms or ammunition. *Hayes*, 129 S. Ct. at 1082 (analyzing 18 U.S.C. § 922(g)(9)). The Court held that the criminal statute under which the defendant was earlier convicted need not have as a specific element that the accused and victim be in a domestic relationship. *Id.* at 1087.

The Court reached this conclusion by first engaging in statutory analysis. *Id.* at 1084-87. It examined closely the definition of "misdemeanor crime of domestic violence," which is "an offense that . . . has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse . . . ." *Id.*; 18 U.S.C. § 921(a)(33)(A)(ii). Significantly, the Court explained that use of "the word 'element' in the singular . . . suggests that Congress intended to describe only one required element." *Hayes*, 129 S. Ct. at 1084. The offender's action and the offender's relationship

are "conceptually distinct attributes[,]" and if Congress intended to make both an element, it "likely would have used the plural 'elements' . . . ." *Id.* (citations omitted).

The Court also examined application of the "rule of the last antecedent," whereby "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* at 1086 (quotation marks and citation omitted). Application of this rule would lead to "two unlikely premises: that Congress employed the singular 'element' to encompass two distinct concepts, and that it adopted the awkward construction 'commi[t]' a 'use.'" *Id.* (citation omitted).

The Court next analyzed the practical considerations underlying Congress's choice to extend the gun possession ban to persons convicted of misdemeanor crimes of domestic violence. *Id.* at 1087-88. Congress found that firearms were not being kept out of the hands of domestic abusers because such persons were frequently not convicted of felonies. *Id.* at 1087. In passing the ban, Congress sought "to close this dangerous loophole" in its firearm prohibitions. *Id.* (quotation marks and citation omitted).

This analysis led the Court to conclude that interpreting the statute "to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose." *Id.*

Further, the Court observed that "[a]s of 1996, only about one-third of the States had criminal statutes that specifically proscribed *domestic* violence." *Id.* Domestic abusers were "routinely prosecuted under generally applicable assault or battery laws." *Id.* Given the relative dearth of state and federal statutes specifically targeting domestic violence, the Court found it highly unlikely that Congress intended to limit its gun prohibition only to persons convicted under

laws making the domestic relationship an element of the predicate offense. *Id*. at 1087-88.

We now examine the statute relevant to this appeal. It begins by allowing the Attorney General to order the removal of an alien who "is within one or more of the following classes" of individuals. 8 U.S.C. § 1227(a). The first subpart lists classes of aliens who were inadmissible at the time of their initial entry or who fit certain other categories. *Id*. at (a)(1). The second statutory subpart is entitled "Criminal offenses." *Id*. at (a)(2). Along with such sections as "General crimes," and "Controlled substances" crimes is a section on "Crimes of domestic violence . . . ." *Id*. at (a)(2)(E).

We elide and combine the statutory language to provide the following language to interpret: "Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien . . . at any time after admission is convicted of a crime of domestic violence . . . ." *Id*.

Applying *Hayes*, we seek an understanding of whether the relevant crime must have as an "element" that the victim have been in a domestic relation with the defendant. 129 S. Ct. at 1087. From the statutory language quoted, we know the alien must have been "convicted" of a crime of domestic violence. A "'crime of domestic violence' means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person . . . ." 8 U.S.C. § 1227(a)(2)(E)(i). The parenthetically-cited statute provides that a "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." 18 U.S.C. § 16(a).

The only use of the word "element" in the entire statutory array is in requiring an element of violence. Bianco makes no argument that the Pennsylvania crime failed to include an appropriate element of violence. The

definition of a "crime of domestic violence" speaks of a crime of violence *committed by* someone in a domestic relationship.

A plain reading of the statute reveals a requirement that the offense of conviction have elements of the use, attempted use, or threat of force, which must be proved, as appropriate, by the categorical or modified categorical approach. The crime also must have been committed by a person in the correct domestic status, though the prior crime need not have the domestic relationship as an element.

Besides statutory interpretation, the Court in *Hayes* articulated certain practical considerations. *Hayes*, 129 S. Ct. at 1087-88. Congress was identifying a factor in a crime – *domestic* violence – that may not often be an element in state criminal statutes. Applying the categorical or modified categorical approach would frustrate Congress's purpose. *Id.* at 1087. That reasoning applies here, too.

Of particular importance to us is that statutes specifically describing crimes of domestic violence are relatively scarce. *Id.* Most perpetrators are prosecuted in state court under general assault and battery laws. *Id.* A categorical approach would render the crime of domestic violence as a basis for removal under Section 1227(a)(2)(E)(i) inapplicable in about one-half of the States. *Id.* n.8. By making the operation of the provision "so limited and so haphazard" as to undermine its purpose, such an interpretation is unreasonable. *Nijhawan*, 129 S. Ct. at 2302.

Based on these precedents, we conclude that under Section 1227(a), a crime of domestic violence need not have as an element the domestic relation of the victim to the defendant. We also conclude that the government has the burden to prove the domestic relationship by clear and convincing evidence, using the kind of evidence generally admissible before an immigration judge. *Id.* at 2303. The alien may present contrary evidence.

No. 09-60597

Admittedly, there are variables that can make the considerations identified in *Hayes* and *Nijhawan* not always a clean fit to the facts of a particular removal. For example, a state may adopt statutes that have explicit elements of domestic violence. If the alien could have been convicted under a specific domestic violence crime but was instead convicted under a general one, perhaps due to a plea bargain, would that affect the result? Additionally, Bianco argues that the Section 1227 definition of the domestic relationship is not limited to marriage. *See* 8 U.S.C. § 1227(a)(2)(E)(i). At times, proof of the domestic relationship may be neither clear nor unchallenged.[2]

How these and other considerations should be weighed is for future cases that properly present them. They do not affect our result.

To be clear, the categorical and modified categorical approaches remain the analysis in the areas of their traditional application, including a court's application of those approaches to identifying the elements of offenses for which aliens may be removed under Section 1227(a)(2).

We have determined that the domestic relationship that must exist for application of Section 1227(a)(2)(E)(i) can be proven by evidence generally admissible for proof of facts in administrative proceedings. Bianco specifically complains about the use of the affidavit of probable cause and criminal complaint to establish the domestic relationship. Those documents identified the victim as Bianco's husband. Both the probable cause affidavit and the criminal complaint credibly established the spousal relationship.

Importantly, Bianco admitted repeatedly in her pleadings that the victim of her aggravated assault was her husband. The sentencing sheet shows that she was sentenced to make restitution to her husband and was ordered to

---

[2] At the hearing before the IJ, an I-751 form was introduced indicating that Libby Bianco's marriage to Mark Bianco was the basis for her conditional residence in the United States. The record indeed is replete with references to the marriage. There may at times be factual doubt about a domestic relationship, but there is none here.

participate in a domestic violence program.    There was sufficient, admissible proof that Bianco had been convicted of a crime of domestic violence.

B.    *Filing a new charge of removability after remand from the BIA*

Bianco argues that the BIA erred in permitting an additional charge to be filed with the IJ after the remand.  The new charge is the one we have been discussing; namely, that Bianco was guilty of a crime of domestic violence.

Applicable regulations authorized this new charge to be filed. "At any time during the [deportation or removal] proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the Service in writing."  8 C.F.R. § 1240.10(e).  Bianco seems to concede as much but argues the IJ is free to consider all new matters *unless* the BIA qualifies or limits the remand for a specific purpose. *See Matter of Patel*, 16 I. & N. Dec. 600 (BIA 1978).  She asserts that the BIA limited the remand in her case for the specific purpose of considering evidence demonstrating her date of admission to the United States.

We look at the remand order to decide if this is correct.    The BIA remanded not only for determining the date of Bianco's admission, but also "for the entry of such further orders as may be necessary and appropriate under the circumstances."  The BIA's guidance to IJs is that "unless the Board qualifies or limits the remand for a specific purpose, the remand is effective for the stated purpose and for consideration of any and all matters which the Service officer deems appropriate in the exercise of his administrative discretion . . . ."  *Id.* at 601.  Here, the BIA did not limit the purpose of the remand.  There was no error in permitting the additional charge.

The petition for review is DENIED.