# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2012

No. 11–60548

Lyle W. Cayce
Clerk

GASPAR ESPARZA-RODRIGUEZ, also known as Juan Munoz Rodriguez, also known as Jose Lopez,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING and HIGGINSON, Circuit Judges, and FOOTE[1], District Judge.
HIGGINSON, Circuit Judge:

Petitioner Gaspar Esparza-Rodriguez ("Rodriguez") seeks review of the final order of the Board of Immigration Appeals ("BIA") finding him ineligible for cancellation of removal under § 240A(b)(9)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b)(1)(C), and deeming him ineligible to be admitted to the United States under § 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I), on the basis that the Texas assault statute for which he was convicted qualified as a crime involving moral turpitude ("CIMT"). For the following reasons, we AFFIRM.

---

[1] District Judge of the Western District of Louisiana, sitting by designation.

No. 11-60548

## FACTS AND PROCEEDINGS

Rodriguez is a Mexican citizen who was admitted to the United States as a legal permanent resident on February 15, 1995.  On April 18, 2001, he was convicted of two Class A misdemeanors: burglary of a vehicle under Texas Penal Code § 30.04(a) and assault under Texas Penal Code § 22.01.  He was sentenced to sixty days in jail for each offense.  After serving his sentence, Rodriguez returned to Mexico.  On June 23, 2010, Rodriguez applied for entry into the United States as a legal permanent resident.  The Department of Homeland Security ("DHS") initiated removal proceedings against him by filing a Notice to Appear ("NTA") in immigration court.  The NTA charged him under § 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I),[2] as an alien ineligible for admission into the United States on account of his prior misdemeanor conviction for a CIMT.

On August 13, 2010, Rodriguez appeared before an Immigration Judge ("IJ"), admitted to the seven factual allegations listed in the NTA, and denied the charge against him.  Rodriguez later submitted an application for cancellation of removal under § 240A(a) of the INA, 8 U.S.C. § 1229b(a),[3] and moved to terminate his removal proceedings, arguing that his assault conviction was not a CIMT and his burglary of a vehicle conviction fell within the petty offense

---

[2] 8 U.S.C. § 1182(a)(2)(A)(i) states, in pertinent part: "Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of -- (I) a crime involving moral turpitude . . . is inadmissible."  8 U.S.C. § 1182(a) correspondingly provides, in pertinent part, that "aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States."

[3] 8 U.S.C. § 1229b(a) states:
The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

2

No. 11-60548

exception under § 212(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1182(a)(2)(A)(ii)(II).[4] After a hearing on February 16, 2011, the IJ determined that Rodriguez's assault conviction was for a CIMT, denied his application for cancellation of removal, and ordered him removed from the United States to Mexico. Rodriguez appealed the ruling to the BIA, which denied his request for oral argument and dismissed his appeal. Rodriguez timely appealed the BIA's decision to this court.

## DISCUSSION

Section 212(a)(2)(A)(i) of the INA provides, in pertinent part, that an alien "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Aliens deemed inadmissible under the INA are "ineligible to be admitted to the United States" under § 212(a) of the INA, 8 U.S.C. § 1182(a), and, if already present, are "deportable" under § 237(a)(1)(A) of the INA, 8 U.S.C.A. § 1227(a)(1)(A).[5] Because the INA does not define the term "moral turpitude" and legislative history does not clarify which crimes Congress intended to characterize as turpitudinous, we have concluded that "the interpretation of this provision [was left] to the BIA and interpretation of its application to state and federal laws [was left] to the federal courts." *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005).

---

[4] 8 U.S.C. § 1182(a)(2)(A)(ii) states, in pertinent part:
Clause (i)(I) shall not apply to an alien who committed only one crime if . . . (II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

[5] 8 U.S.C. § 1227(a)(1)(A) states, in pertinent part: "Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."

No. 11-60548

Through its administrative decisions, the BIA has defined "moral turpitude" as encompassing conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *In re Solon*, 24 I. & N. Dec. 239, 241–42 (BIA 2007); *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 288 (5th Cir. 2007). We give *Chevron* deference to the BIA's interpretation of the term "moral turpitude" and its guidance on the general categories of offenses which constitute CIMTs, but we review *de novo* the BIA's determination of whether a particular state or federal crime qualifies as a CIMT. *See Smalley v. Ashcroft*, 354 F.3d 332, 335–36 (5th Cir. 2003). "[T]his two-step approach provides both consistency—concerning the meaning of moral turpitude—and a proper regard for the BIA's administrative role—interpretation of federal immigration laws, not state and federal criminal statutes." *Id.*

Because the term "assault" captures "a broad spectrum of misconduct, ranging from relatively minor offenses, e.g., simple assault, to serious offenses, e.g., assault with a deadly weapon," *In re Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996), the BIA has explained that determining whether an assault statute is a CIMT requires "an assessment of both the state of mind and the level of harm required to complete the offense." *In re Solon*, 24 I. & N. Dec. at 242. To rise to the level of a CIMT, the BIA has held that an assault statute must have at least two characteristics. First, the scienter element must require specific intent, or, put another way, the *actus reus* must be accompanied by "the evil intent, depraved or vicious motive, or corrupt mind associated with moral turpitude." *Id.* at 241. Second, the assault statute must require "a meaningful level of harm, which must be more than mere offensive touching." *Id.* at 241–42. Several

4

No. 11-60548

courts, but not all, and the BIA, but not always, require also an aggravating element indicative of the inherent vileness of the prohibited conduct.[6]

Having detailed the characteristics an assault statute must have to be considered a CIMT, we turn to Rodriguez's crime of conviction. Texas Penal Code § 22.01(a) (Assault) states:

> A person commits an [assault] offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

"Bodily injury" is defined under Texas law as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8). This "purposefully broad" definition of bodily injury encompasses "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Morales v. State*, 293 S.W.3d 901, 907 (Tex. Crim. App. 2009).

---

[6] *See Nguyen v. Reno*, 211 F.3d 692, 695 (1st Cir. 2000) (explaining that "an assault may or may not be a crime of moral turpitude," noting that "the dividing line is the aggravating element"); *Uppal v. Holder*, 605 F.3d 712, 717 (9th Cir. 2010) ("[T]o rise to the level of moral turpitude, an assault crime must involve a particular type of aggravating factor, one that says something about the turpitude or blameworthiness inherent in the action."). *Contra Mustafaj v. Holder*, 369 F. App'x 163, 168–69 (2d Cir. 2010) (unpublished) (holding that a New York assault statute qualified as a CIMT even though it lacked an aggravating factor). The BIA's decision-making on this point also has been uneven. *Compare Matter of Ahortalejo-Guzman*, 25 I. & N. Dec. 465, 465 (BIA 2011) (explaining that simple assault is not a CIMT unless it "necessarily involves some aggravating factor that indicates the perpetrator's moral depravity"), *with In re Solon*, 24 I. & N. Dec. at 242–46 (explaining that although "the presence of an aggravating factor can be important in determining whether a particular assault amounts to a crime involving moral turpitude . . . the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction").

5

No. 11-60548

We approach whether a particular statute meets the BIA's definition of moral turpitude in two ways. The first approach, known as the categorical approach, assesses whether "the minimum reading of the statute necessarily reaches only offenses involving moral turpitude." *Amouzadeh v. Winfrey*, 467 F.3d 451, 454–55 (5th Cir. 2006). If so, we end our inquiry there. *Id.* If, however, the statute has multiple subsections or an element phrased in the disjunctive, such that some violations of the statute would involve moral turpitude and others not, we apply the modified categorical approach, under which we examine the record of conviction[7] to determine under which subsection the alien was convicted and which elements formed the basis for the conviction. *See Bianco v. Holder*, 624 F.3d 265, 268–69 (5th Cir. 2010); *Amouzadeh*, 467 F.3d at 455; *see also Calderon-Dominguez v. Mukasey*, 261 F. App'x 671, 673 n.9 (5th Cir. 2008) (unpublished). After identifying the elements of the particular crime of conviction, we inquire whether those elements, considered as a whole, constitute a CIMT.[8] *Id.*

The categorical approach, applied to this case, does not resolve the matter because a subsection of the Texas assault statute, § 22.01(a)(3), proscribes physical contact that is merely "offensive or provocative," conduct that the BIA

---

[7] Where, as here, a defendant has pleaded guilty to the offense, the record of conviction consists of "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Bianco v. Holder*, 624 F.3d 265, 269 (5th Cir. 2010).

[8] As additional guidance, we note that both the BIA decision on review, and also the government in argument, advert to a "third step" inquiry looking at facts outside the record of conviction, pursuant to *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 704 (A.G. 2008). This approach, broadly defined, is inconsistent with our decision in *Bianco*, where we clarified that, "Our search is for the 'inherent nature of the crime, as defined in the statute . . . rather than the circumstances surrounding the particular transgression.'" 624 F.3d at 268 (quoting *Okabe*, 671 F.2d at 865)). But, more narrowly defined, it should be acknowledged that Section 212(a)(2)(A)(i)'s CIMT focus is on "acts which constitute the essential elements of . . . a crime involving moral turpitude," and to that extent, acts charged and admitted to or proven, and in the record of conviction, as delimited by federal law governing the modified categorical approach, might properly be considered when BIA makes its CIMT determination.

has held does not qualify as morally turpitudinous. *In re Solon*, 24 I. & N. Dec. at 241 (explaining that assault statutes which criminalize "offensive or provocative physical contact" are not categorically CIMTs).  Because § 22.01 is not categorically a CIMT, we proceed to the modified categorical approach. *See Lazaro v. Holder*, 390 F. App'x 319, 321 (5th Cir. 2010) (unpublished) (applying the modified categorical approach after concluding that § 22.01 is not categorically a CIMT).

Count I of the indictment, to which Rodriguez pleaded guilty, charges him with "intentionally or knowingly caus[ing] bodily injury to [the victim] by striking him on the head with a flower pot . . . [and] kicking him on the side of his body."  That language tracks the statutory elements of § 22.01(a)(1), which proscribes "intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1).  His judgment and sentence reflects that he was convicted of a Class A misdemeanor, further evidence that he pleaded guilty to violating § 22.01(a)(1). *See Calderon-Dominguez*, 261 F. App'x at 673 (explaining that "only a conviction under § 22.01(a)(1) could give rise to a Class A misdemeanor" because subsections (a)(2) and (3) are Class C misdemeanors unless they involve an elderly or disabled individual or a sports participant).  Stated otherwise, Rodriguez's guilty plea to the charged offense of striking someone on the head and kicking him on the side of his body narrows his crime to an intentional or knowing assault, and an assault which, statutorily, did cause bodily injury beyond an offensive touching—indeed, did cause pain, illness or impairment. Having determined that Rodriguez pleaded guilty to subsection (a)(1) of the Texas assault statute, we next review the BIA's conclusion that this subsection is a CIMT.

The BIA concluded, after employing the modified categorical approach, that Rodriguez's record of conviction "shows that his offense was committed with

the requisite level of scienter . . . and involved conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons and to society in general.' " Its decision follows from *In re Solon*, a case in which the BIA held that a New York statute proscribing "intent to cause physical injury," defined similarly as "impairment of physical condition or substantial pain," is a CIMT because it "reflects a level of depravity or immorality appreciably greater than" that involved in simple assault or battery crimes. 24 I. & N. Dec. at 243–45. It is also consistent with this court's two prior unpublished rulings that § 22.01(a)(1) is a CIMT. *See Aldape-Garcia v. Holder*, 472 F. App'x 304, 305 (5th Cir. 2012) (per curiam); *Calderon-Dominguez*, 261 F. App'x at 673.

Even if we were to question the wisdom of the BIA's considered determination that Rodriguez's conviction under § 22.01(a)(1) is a CIMT, "our inquiry here centers on the reasonableness of the BIA's conception of the term 'moral turpitude,' an inquiry that is necessarily and unavoidably constrained by the principles of *Chevron* deference." *Mustafaj*, 369 F. App'x at 169. We therefore join the Second Circuit in concluding, in a nearly identical context, that,

> we cannot say that it was unreasonable for the BIA, upon careful consideration, to conclude that an intentional assault that is intended to and does cause more than a *de minimis* level of physical harm, is "contrary to the accepted rules of morality and the duties owed between persons or to society in general."

*Id.*

We AFFIRM.