NO. 07-10-0014-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH  30, 2011

_____

VINTON DERRICK CUMMINGS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY;

NO. 1132330D; HONORABLE SHAREN WILSON, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

Vinton Derrick Cummings was convicted of murdering his daughter's boyfriend. He raises four issues to challenge that conviction:  1) the State used a peremptory strike on an African-American member of the jury panel in violation of the Fourteenth Amendment, 2) the trial court erred in charging the jury on provocation as a limitation on self-defense during the guilt/innocence phase, 3) the trial court erred in refusing to admit evidence of racist epithets and racial symbols, and 4) the trial court erred in refusing to

instruct the jury on the lesser-included offense of aggravated assault. We affirm the judgment.

Appellant and the victim, Temple Jernigan, had a contentious relationship due to appellant's disapproval of his daughter[1] having moved in with Jernigan. On October 9, 2008, appellant met Jernigan between 6:45 a.m. and 7:00 a.m. on a street in Tarrant County, Texas, for the alleged purpose of giving Jernigan a gun to sell for appellant. At the end of that encounter, Jernigan was dead from two bullets, one to his chest and one to his head. Appellant fled the scene, threw the gun in a lake, and returned to his job at American Airlines. The State contended that the murder was committed knowingly and intentionally or that he knowingly and intentionally commited an act clearly dangerous to human life with the intent to cause serious bodily injury. Appellant testified at trial and claimed that he shot Jernigan in self-defense.

*Issue 1 – Batson Challenge*

Appellant is African-American and two members of the jury were of the same race. However, the State used peremptory challenges on three other black venire members. On appeal, appellant attacks only the State's strike against Alexander Warren Malone.

One making a *Batson*[2] challenge must make a *prima facie* showing of racial discrimination. *Williams v. State,* 301 S.W.3d 675, 688 (Tex. Crim. App. 2009), *cert. denied,* ___ U.S. ___, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010). The burden then shifts to the State to offer a race-neutral explanation for the strike. *Id.* Once the State has

---

[1]The girl was appellant's stepdaughter whom appellant adopted.

[2]*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

done so, the burden shifts back to the defendant to show the explanation is really a pretext for discrimination. *Id.* We accord great deference to the trial court's determination and do not overturn it unless it is clearly erroneous. *Id.*

The explanation offered by the State with respect to Malone included: 1) the way he answered his jury questionnaire in that he is twenty-one years old and unemployed, he provided minimal information, and he did not follow the instructions with respect to ranking the goals of the criminal justice system, and 2) his demeanor in the courtroom in that he nodded his head in the affirmative during *voir dire* during a discussion as to whether police officers could lie. In response, appellant argued that Malone's questionnaire was filled out similar to other persons and that appellant had not observed the demeanor referenced by the State. The trial court found that the State had "expressed a race-neutral reason" for the strike.

At trial, appellant offered the name of Bradley Shepperd as someone who answered a questionnaire similar to Malone. Shepperd did fail to rank the goals of the criminal justice system as did Malone; nevertheless, the trial court noted that the remainder of his questionnaire "is complete," and we note it was also more informative than that of Malone. Appellant also points to William Howard Colley, III, as a juror similar to Malone[3] in that he is young and unemployed. However, Colley explained he was a student and he has training as an EMT and a firefighter, he followed the instructions with respect to ranking the goals of the criminal justice system, he had more hobbies and personal interests than Malone, he belonged to several clubs or groups

---

[3]Appellant also refers on appeal to Catherine Louise Block as being unemployed; however, it could be inferred from her questionnaire that she was a housewife. Additionally, the remainder of her questionnaire was complete and informative.

3

whereas Malone belonged to none, he indicated he read the Star-Telegram while Malone did not indicate that he read any newspapers or magazines, and he was a Christian, whereas Malone's religious preference was "open." Therefore, Colley provided more information from which the State could make a decision regarding the desirability of him as a juror.

Youth and employment (or lack thereof) are race neutral reasons to strike a juror, *Patrida v. State,* 133 S.W.3d 738, 742 (Tex. App.–Corpus Christi 2003, no pet.), as is carelessness or error in completing or failing to complete the juror information card. *Ester v. State,* 151 S.W.3d 660, 662 (Tex. App.–Waco 2004, no pet.); *Newsome v. State,* 829 S.W.3d 260, 266 (Tex. App.–Dallas 1992, no pet.). That being so, we cannot say the trial court clearly erred in finding no racial pretext in the striking of Malone.

*Issue 2 – Jury Charge on Provocation*

In his second issue, appellant contends the trial court erred in giving an instruction on provocation to the jury. We disagree and overrule the issue.

Self-defense is not a permissable defense when the actor provoked the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. §9.31(b)(4) (Vernon Supp. 2010). Furthermore, an instruction on provocation is required when there is some evidence for a rational jury to find beyond a reasonable doubt that 1) the defendant did some act or used some words which provoked the attack on him, 2) such words or acts were reasonably calculated to provoke the attack, and 3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other person. *Smith v. State,* 965 S.W.2d 509, 513 (Tex. Crim. App. 1998). The exact words or actions need not be proven; the

4

jury must merely be able to find that there were some provoking acts or words. *Kennedy v. State,* 193 S.W.3d 645, 655 (Tex. App.–Fort Worth 2006, pet. ref'd). Furthermore, each element may be proved circumstantially. *Fink v. State,* 97 S.W.3d 739, 742 (Tex. App.–Austin 2003, pet. ref'd). Finally, in reviewing the trial court's decision to include the instruction, we look at the evidence in a light most favorable to the instruction. *Smith v. State,* 965 S.W.2d at 513.

Here, the record shows that 1) appellant was unhappy that his daughter had moved in with Jernigan, 2) appellant and Jernigan had exchanged angry words in the month or two leading up to Jernigan's death, 3) Jernigan had threatened appellant prior to the day of the murder, 4) appellant testified that Jernigan became angry when he complained to Jernigan (at the scene of the shooting) that Jernigan would not allow the girl to spend uninterrupted time with her family, 5) appellant was pointing his finger at Jernigan in an aggressive manner immediately before the shooting, 6) appellant took a loaded gun with him to the meeting with Jernigan, 7) appellant's leaving from and returning to work before and after the shooting, respectively, was done in a manner that failed to show he had left work to meet with Jernigan, 8) the path of the bullet wound to Jernigan's head was down which indicated that the weapon was being held higher than the target when discharged, 9) appellant threw the gun in a lake after leaving the scene of the shooting, and 10) appellant drove a rental car to the early morning meeting with Jernigan as opposed to his own truck. From this, a jury could reasonably infer that appellant was planning a physical confrontation of some type with Jernigan and undertook conduct that could provoke a similar response from Jernigan. Thus, the trial court did not error in submitting the instruction.

*Issue 3 – Racist Epithets and Symbols*

Next, appellant complains of the trial court's refusal to admit 1) evidence that Jernigan used the word "nigger" when previously threatening to "whoop" appellant's "ass," 2) a picture of appellant's daughter[4] wrapped in a Confederate flag, and 3) a statement by Jernigan that appellant's daughter "was going to be one of us." The trial court found this evidence to be "more prejudicial than probative." This finding was allegedly an abuse of discretion because the evidence conveyed "a threat of violence" and death, given the history of this state, and explained why appellant felt threatened and needed to defend himself. We overrule the issue.

The applicable standard of review is one of abused discretion. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). We also note that the subject matter of the photograph was before the jury; appellant's daughter had described its content as a picture of herself "with a Rebel flag blanket" and further testified that Jernigan had taken the photo.[5] The latter was also shown to appellant at trial, and he testified that Jernigan had previously disclosed it to him and that it "upset" him. Next, the statement that the daughter "was going to be one of us" was made at the time appellant was shown the picture by Jernigan, and even though it was excluded at trial, appellant was not prevented from putting evidence before the jury that the subject matter of the picture caused him emotional upset. That, coupled with 1) the evidence that appellant was black, while his adopted daughter and Jernigan were white and 2) the connotations appended to a confederate flag (as well as the connotations arising from draping

---

[4]Appellant's daughter was white.

[5]The photograph itself was not admitted.

6

oneself in the flag) served to interject the issue of race and the aspect of historic aggression against blacks into the mix, just like appellant wanted. So, the record effectively provided appellant that which he sought to prove.

As for prohibiting reference to the use of "nigger," the trial court nonetheless allowed appellant to disclose that Jernigan had threatened to assault appellant. Thus, appellant's ability to establish the fact he sought to prove, *i.e.* he feared Jernigan due to prior threats, was not impeded. And, given that evidence of race and racial attitudes was already before the jury, it was reasonably debatable whether permitting the interjection of inflammatory words like the "nigger" word would enhance the establishment of appellant's defense or simply cause jurors to feel spite or distaste towards those using the words. *See Walters v. State,* 247 S.W.3d 204, 217 (Tex. Crim. App. 2007) (stating that a trial court does not abuse its discretion when the decision fell within the zone of reasonable disagreement). In other words, the trial court was forced to assure that appellant's fate was determined by the evidence and legal theories as opposed to emotion. And, because appellant had been able to develop his defense and because aspects of Jernigan's racial animus were already interjected into the trial via other evidence, the trial court was well within its discretion to avoid stoking emotional fires through the admission of overtly racial and inflammatory epithets. *See Manning v. State,* 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (stating that in making the requisite determination one must consider 1) the extent to which the evidence serves to make the fact of consequence more or less probable, 2) the potential of the evidence to impress the jury in an irrational but indelible way, 3) the time needed to develop the evidence, and 4) the proponent's need for the evidence); *Morales v. State,* 293 S.W.3d 901, 911

7

(Tex. App.–Texarkana 2009, pet. ref'd) (stating that unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one).

*Issue 4 – Lesser-Included Offense*

Finally, appellant argues that he was entitled to an instruction on the lesser-included offense of aggravated assault. We overrule the issue.

A defendant is entitled to an instruction on a lesser offense when the lesser offense is included within the proof necessary to establish the charged offense, and some evidence exists which would permit the jury to find that if appellant is guilty, he is guilty only of the lesser offense. *Guzman v. State,* 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). The State concedes that aggravated assault can be a lesser-included offense of murder. Given that, our task is to assess whether the evidence allegedly warranting the submission would permit the jury to determine that if appellant is guilty, he is guilty only of aggravated assault. And, that is where the argument before us falters.

Appellant testified that he shot Jernigan the first time to get Jernigan "off of him" and that he did so intentionally. The second shot purportedly was an accident. Yet, a medical expert testified that both shots were fatal, and appellant cites us to no evidence contradicting that. Because of this, he was not entitled to the charge since the lesser offense of aggravated assault is unavailable when there is no evidence that the victim suffered a lesser form of serious bodily injury than death. *Jackson v. State,* 992 S.W.2d 469, 475 (Tex. Crim. App. 1999) (stating that a murder defendant is not entitled to an instruction on the lesser-included offense of aggravated assault when the evidence

8

showed him, at the least, to be guilty of a homicide and since there was no evidence from which a rational jury could conclude that appellant did other than cause the death of the victim, the only lesser-included offense that was raised by the evidence of recklessness was manslaughter, not aggravated assault).

Accordingly, we affirm the judgment.

Brian Quinn
Chief Justice

Do not publish.