

# NUMBER 13-12-00184-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TRAVIS TODD,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the County Court of Law No. 1
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Travis Todd appeals his conviction for misdemeanor resisting arrest. *See* TEX. PENAL CODE ANN. § 38.03 (West 2011). The jury found appellant guilty of resisting arrest, and the trial court sentenced him to eight-days' confinement in the county jail and fined him $2,000.00. By one issue, appellant contends that the evidence was insufficient to prove that he used force against the arresting officer. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officers Nathaniel Perez and John Esparza were dispatched to appellant's house in response to a reported disturbance involving an intoxicated person. After talking to appellant's daughter, Officer Perez believed that he had probable cause to arrest appellant for assaulting his daughter. Officer Perez approached appellant, who was outside smoking a cigarette, and told him to put out the cigarette. Appellant refused, saying, "No, I am not going—I am going to stand here and smoke." Officer Perez again ordered him to extinguish the cigarette, but appellant responded, "Well, what if I don't?"

According to Officer Perez, he then pulled out his taser, turned it on, and pointed it at appellant and said, "You are under arrest. Put your cigarette out. Turn around. Place your hands behind your back." Officer Perez testified that appellant yelled, "Arrested for what?" Officer Perez told him that he was under arrest for "assault family violence." Appellant still refused to comply, and Officer Perez removed the cartridge from the taser to produce a "warning arc."[1] Officer Perez testified that because appellant failed to comply after he displayed the "warning arc":

> Deputy Esparza grabbed a hold of one of his arms and tried to place it behind his back. They began to struggle, so I went to help Deputy Esparza. I grabbed one arm. He had the other. I was trying to place his arm—his hand and his arm behind his back. He was pulling away from us, pushing away from us using his—his physical strength. We are trying to pull this way, he is pulling this way away from us, you know.

Officer Perez stated that before he began helping Officer Esparza, Officer Esparza and appellant struggled and "[t]hey end[ed] up against the guardrail . . . Officer Esparza is

---

[1] During trial, Officer Perez described a "warning arc" as follows: "[Y]ou remove your cartridge, and your cartridge is what holds the two probes that when you typically see someone get tased, one shoots out, and the other one shoots low. What I did is I removed the cartridge." Officer Perez used his taser to demonstrate a "warning arc" to the jury.

2

on this side trying to pull his arms behind his back." Officer Perez came over to help Officer Esparza arrest appellant, and appellant continued to resist: "He is—what he is doing is he is pulling his body and pulling his hands using—like a—like you are doing a—in the gym or you are doing a cable crossover, you know. He is using his strength to pull away. We are pushing this way." To clarify Officer Perez's "cable cross-over" description, the prosecutor demonstrated a movement and asked Officer Perez if it accurately reflected the appellant's movement. Officer Perez affirmed that it did.

Officer Esparza testified that when he reached for appellant's arm, appellant "started moving his arm in a forward motion trying to break the grasp that I had on his wrist and moving his arm back and forth, trying to lift it up." When Officer Perez grabbed appellant's other arm, appellant "was still moving his arms forward, was still lifting his arms up, moving his body, trying to prevent us from grabbing both arms and putting them behind his back." Officer Esparza stated that Officer Perez's description of appellant's movement as a cable crossover was accurate.

Officers Perez and Esparza eventually handcuffed appellant, and began to escort him to their patrol car. But, according to Officer Perez's testimony, appellant "leaned himself back into" and pushed against them. Officer Esparza testified that appellant "kept leaning back with his back and putting his feet down and stomping his feet to try to get us so we couldn't escort him . . . to prevent him [sic] from taking him to the [patrol] unit." Officer Esparza demonstrated appellant's conduct before the jury.

The Officers succeeded in putting appellant in the patrol car by using the "come-along technique."[2]  At trial, Officer Perez acknowledged that appellant did not strike or kick him, and Officer Esparza acknowledged that appellant did not even attempt to strike or kick them.   At some point during the arrest or escort, appellant cut his hand, and blood was smeared on the back of his shirt.   Officers Perez and Esparza speculated that the cut was caused by the handcuffs when appellant forcefully resisted them.

Appellant's testimony, as well as his daughter's, characterized appellant as compliant with the officers, who, without provocation, allegedly used excessive force in arresting him.   Appellant explained that "I may have pulled back a little bit" and "I could have been pulling somewhat," but only to the extent necessary to inform the officers of a medical condition in his hips that caused him severe pain.[3]   He denied having the ability, due to the medical condition, to stomp or resist them.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim.

---

[2]   Officer Perez described the "come-along technique" as follows:

[S]ince his body weight is being pushed back against us and his hands are behind him, what we do is we use one of our arms, what they call underhook it, you know, put it between—put it in this hole here.   And what that does is it brings his hands up, pushes his head down, and now his body weight is over his feet.   So when we are walking, we are kind of holding him, supporting his weight, but walking for him, so all he is doing is letting his feet follow.

[3]   Appellant testified that he was trying to ask them to put him in the patrol car before handcuffing him "because it was too hard for me to get my legs in the car, I could not get in the car without the use of my hands.   And I think this is where they felt I was resisting arrest . . . ."

4

App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The elements for resisting arrest are: (1) a person; (2) intentionally; (3) prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest of actor or another; (4) by using force against the peace officer or another. TEX. PENAL CODE ANN. § 38.03(a).

5

## III. DISCUSSION

In appellant's sole issue on appeal, appellant challenges the sufficiency of the evidence to prove that he used force against the arresting officers. Appellant relies on *Leos v. State*, a case in which this Court held that the appellant's conduct of holding his hands to his stomach to prevent the officers from handcuffing him and crawling away on his shoulders and knees was not force *against* a peace officer. *Leos v. State*, 880 S.W.2d 180, 181 (Tex. App.—Corpus Christi 1994, no writ) (emphasis added). Although appellant relies on *Leos*, its facts are narrow and distinguishable. In *Leos*, the defendant attempted to merely crawl away from the arresting officers and used no force against the officers to resist arrest. In that regard, courts have held that the mere refusal to being arrested does not constitute resisting arrest by force. *Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.). Noncooperation, however, when combined with force or violence, is resistance. *See id.* (citing *Bryant v. State*, 923 S.W.2d 199, 206 (Tex. App.—Waco 1996, writ ref'd)).

In *Furch v. State*, we again addressed an evidentiary sufficiency issue regarding a misdemeanor resisting-arrest conviction. *Furch v. State*, No. 13-01-00815-CR, 2002 Tex. App. LEXIS 8804, at *4–6 (Tex. App.—Corpus Christi 2002, no pet.) (not designated for publication). In that case, a deputy answered a domestic disturbance call after the wife notified law enforcement about an altercation with her husband, Furch. *Id.* at *1. They had been drinking alcohol, and they both had scratches on their necks and faces. The deputy arrested the wife without incident. *Id.* However, when the deputy approached Furch and advised him that he was under arrest, Furch started walking away

6

from the deputy saying that he was not going to jail. *Id.* at \*5. At that point, the deputy reached for him and grabbed a hold of his arm. *Id.* at \*1–2. Furch twisted, turned, pushed away from the deputy, and took off running towards his house. *Id.* at \*5. The deputy caught up with him and handcuffed him. *Id.* at \*2. We held that this evidence was sufficient to uphold the jury's verdict that Furch used force to resist arrest. *Id.* at \*6.

Here, the evidence shows that appellant effectuated his preference against arrest by exercising physical force directly against the officers to the extent it required both officers' efforts to counter his "cable crossover" pull so that they could put the handcuffs on him. Appellant's resistance was so forceful that he cut himself on the handcuffs and bled all over the back of his shirt. Further, while the officers were escorting appellant to the patrol car, his resistance against them was so pronounced that they had to use a special technique, the "carry-along," in order to direct him to the car. Appellant's conduct is more like the defendant's conduct in *Washington v. State* than the defendant's in *Leos*. *See* 525 S.W.2d 189, 190–91 (Tex. Crim. App. 1975) (holding that the defendant's use of physical strength to drag two officers eight to ten feet was sufficient evidence of force used to resist arrest).

We further note that the trial testimony indicates that several demonstrations and gestures were used to clarify testimony that was given during the trial.[4] As this Court

---

[4] For example, Officer Perez testified, "We are trying to pull this way, he is pulling this way away from us, you know." Later in his testimony, Officer Perez also said, "He is using his strength to pull away. We are pushing this way." After Officer Perez testified that appellant's movement resembled a "cable crossover," the State asked, "So I'm—if I demonstrate, tell me, like this?" Officer Perez indicated that the demonstrated movement was correct.

Officer Esparza demonstrated the "come-along technique" for the jury. In addition, the following exchange occurred while during Officer Esparza's testimony:

7

explained in *Gaona v. State*, demonstrations or gesticulations that take place at trial, but that are not reduced to articulated descriptions in the record, may influence the jury. We must presume that the undescribed acts support the jury's findings. *Gaona v. State*, 733 S.W.2d 611, 613 n.1 (Tex. App.—Corpus Christi 1987, no writ*); see also Morales v. State*, 293 S.W.3d 901, 909 (Tex. App.—Texarkana 2009, pet. ref'd) ("We, too, are constrained to defer to the jury's findings, based on its observation of the gestures and demonstrations at trial . . . which were not transcribed and which we cannot see."); *Rogers v. State*, 756 S.W.2d 332, 336–37 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (holding standard of review—reviewing record in light most favorable to jury verdict—requires assumption that the trial demonstrations supported the jury verdict).

We hold that the foregoing testimony, particularly when coupled with the demonstrations at trial, shows that a rational trier of fact could have found beyond a

---

| State: | [T]ell me if I am doing it right that it was like a cable crossover at the gym, right? |
|---|---|
| Esparza: | Yes, sir. |
| State: | So are you trying to—when you are trying to handcuff someone, you are trying to put their hands behind their back— |
| Esparza: | Yes, sir. |
| State: | —Like we demonstrated, right? And this—like this— |
| Esparza: | Well, actually— |
| State: | Like that? |
| Esparza: | Like that, yes, sir. |

Throughout trial, the witnesses and attorneys also made several references to distance as they related to persons in the courtroom. The State responded to appellant's motion for directed verdict, which was premised on the distinction between passive and active noncooperation during arrest in *Sheehan*, by reminding the trial judge that "[T]hey were trying to get him to comply, [and he] put his hands behind his back and he is actively pushing forward like this." *See Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.).

reasonable doubt that the evidence was sufficient to support the verdict that appellant used force in resisting arrest.   We overrule appellant's sole issue on appeal.

## IV.  CONCLUSION

We affirm the trial court's judgment.


_____
GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of October, 2012.