# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00475-CR
NO. 03-11-00476-CR

**Patrick Marshall, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NOS. CR-10-0943 & CR-10-0959, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

With regard to the conviction for assault–family violence, I agree with the majority's determination that Marshall impeded Shawne's "normal breathing." However, because I disagree that the evidence is sufficient to show that he caused her bodily injury, I dissent to that portion of the opinion, and I would render a judgment of acquittal as to that charge. I concur with the remaining portions of the opinion and judgment.

Under section 22.01(a)(1), a person commits assault by causing bodily injury to the victim, which means that bodily injury is a central element of the offense. *See* Tex. Penal Code § 22.01(a)(1). Such an assault is generally a misdemeanor, but when the crime is committed (1) against a family member and (2) by impeding the victim's normal breathing or blood circulation, it is enhanced to a third-degree felony. *Id.* § 22.01(a)(1), (b)(2)(B); *see Luna v. State*, 402 S.W.3d 849, 850 (Tex. App.—Amarillo 2013, no pet.) (discussing how assault against family member enhances

assault from misdemeanor to felony under certain circumstances). Thus, to convict Marshall of the third-degree felony charge of assault by suffocation, the State was required to prove that Shawne suffered bodily injury as a result of Marshall placing a pillow over her head. *See* Tex. Penal Code § 22.01(a)(1), (b)(2)(B).

Shawne testified that Marshall pushed her onto a bed and said, "If I can't have you, nobody can," placing a pillow over her face and holding it tight against her face with his hands. However, the pillow was not on her face long enough for her to lose consciousness, and she testified only that she could not take deep breaths.[1] Marshall then let go of the pillow and left after another short scuffle. The only evidence of any physical injuries related to other parts of the altercation, not the smothering—Shawne's glasses were crooked, she nicked her finger on a knife, and she said Marshall bit her on the chest. Asked whether she was unable to breathe, Shawne answered, "I believe I could still breathe. It happened so fast that I don't remember not being able to breathe. I didn't pass out. I don't remember gasping for air when he finally got up." Shawne was never asked if she felt any pain or even discomfort, nor did she volunteer such information.

"Bodily injury" is broadly defined as "physical pain, illness, or any impairment of physical condition," that "physical impairment" has been interpreted "to include the diminished function of a bodily organ," and that "[a]ny physical pain, however minor, will suffice." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). Further, the jury may infer physical pain "because people of common intelligence understand pain and some of the natural causes of it." *Id.*; *see Lane v. State*, 763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989) (bodily injury defined as

---

[1] Shawne told the responding police officers that Marshall put a pillow over her face but that it was not there long enough that she "lost any breath."

physical pain, illness, or impairment of physical condition and "encompass[es] even relatively minor physical contacts so long as they constitute more than mere offensive touching"). However, in my survey of cases interpreting the assault statute, the common element seems to be that as a result of the assault, the victim suffered physical impairment (such as loss of consciousness), physical injury, or pain or, at least, that the jury could have inferred from the evidence that the victim suffered pain.[2] None of those situations are presented by the evidence here.

---

[2] *See, e.g.*, *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (victim said she felt pain when grabbed by defendant); *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) (officer's wrist was bruised and she testified that she suffered physical pain during struggle); *Cano v. State*, 614 S.W.2d 578, 579 (Tex. Crim. App. 1981) (victim was pushed to ground, cutting mouth so as to require stitches); *Allen v. State*, 533 S.W.2d 352, 354 (Tex. Crim. App. 1976) (officer testified that he was kicked in nose and suffered pain for three or four days); *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975) (victim testified she suffered physical pain and sustained small bruise); *Ramirez v. State*, 518 S.W.2d 546, 547-48 (Tex. Crim. App. 1975) (officer was hit in face by defendant); *Morales v. State*, 293 S.W.3d 901, 909-10 (Tex. App.—Texarkana 2009, pet. ref'd) (officer said he was "injured," suffering skinned knees and effects of pepper spray, and gave physical demonstration of struggle); *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (defendant said he did not feel pain at moment he was struck on head, but he became dizzy and fell down and was in pain shortly after assault and for two weeks after assault); *Marinos v. State*, 186 S.W.3d 167, 171-73 (Tex. App.—Austin 2006, pet. ref'd) (victim drifted in and out of consciousness while defendant held plastic bag against nose and mouth); *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.) (trial court could have inferred that victim "felt physical pain when appellant hit her on the back of the head"); *Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.—El Paso 2002, no pet.) (no testimony that victim suffered physical pain, but victim was punched in mouth, and photographic evidence showed swelling and abrasion inside her lip; jury could infer that "victim suffered pain as a result of her injuries"); *Wawrykow v. State*, 866 S.W.2d 96, 100 (Tex. App.—Beaumont 1993, pet. ref'd) (although officer did not directly testify that defendant caused her physical pain, jury could infer that defendant's striking officer's back and head with her fists "'hurt' the officer or caused her 'physical pain'"); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (victim never testified about pain or "hurt" from bruises and muscle strain suffered as result of defendant's actions, but did testify it took six to eight weeks to get over bruises and strain; it was reasonable to infer that "bruises and muscle strain caused [victim] 'physical pain'").

3

I am particularly influenced in my conclusion by the opinion of the court of criminal appeals in *Garcia*, 367 S.W.3d at 684-90. Garcia was charged with endangering her child, who was between one and two years of age, which required a showing that the child was placed in "'imminent danger of death, bodily injury, or physical or mental impairment.'" *Id.* at 684 (quoting Tex. Penal Code § 22.041(c)). Elyse Haynes called the police after Garcia, a woman Haynes did not know, knocked on her door asking for help at about 2:00 a.m. *Id.* Haynes was concerned because Garcia, who was holding her shivering and diaper-clad child, entered Haynes's unlocked car with the child. *Id.* When the police found Garcia and her child in the unheated car, it was 58 degrees with 69 percent humidity, there was a breeze, and the police officers were wearing thermal underwear under their uniforms. *Id.* at 685-86. The child was wearing only a very wet diaper, her skin was cold to the touch, her lips were blue, she was shivering and had a runny nose, and she did not stop shivering until she sat in front of a car heater for almost thirty minutes. *Id.* at 685-86. After considering that evidence, the court held that

> no rational fact finder could have determined that appellant's child had sustained bodily injury or physical impairment. Although there is evidence that the child was shivering, had blue lips, and wore only a wet diaper, no evidence shows that she was experiencing physical pain or impaired organ function from being exposed to the 58-degree weather while wearing only a wet diaper. Haynes testified that the child did not cry until she was taken from her mother's arms and that, at that point, the child was "very scared." The evidence in the record shows that appellant quickly placed the child in a car with the doors closed and the windows up after they were turned away from Haynes's apartment door. While inside the car, appellant sometimes held the child close to her, which would give the child some warmth from appellant's body, but at other times appellant held the child loosely. At most, the record shows that the child was shivering and had blue lips, which would signify that she was very cold, but she was not crying or otherwise exhibiting any signs of pain or impairment. Although we recognize that a child could sustain bodily injury or physical impairment from exposure to extreme temperatures for a short time or

4

from exposure to more moderate temperatures outdoors for an extended time, the record does not establish that either of those situations occurred here. Based on the sparse record in this case, the jury could not have reasonably inferred that the child experienced bodily injury or physical impairment.

*Id.* at 688 (footnote omitted). Even when considering whether the child was *at risk for harm*, the court noted that there was no evidence about how long Garcia and the child were outside before they got into the car, holding:

> The question is not whether the child would have been more comfortable if she was warmer, but whether the child was placed in danger of imminent bodily injury or physical impairment due to the cold and the lack of clothing. Viewed in a light most favorable to the verdict, the evidence in this sparse record shows that the child was outside in almost sixty-degree weather for what the evidence can only establish was a short amount of time; the child was sheltered in a car by appellant who sometimes held her close to her body; and the child, though obviously cold, did not cry until she was taken from her mother's arms. We, therefore, cannot conclude that any rational fact finder could determine beyond a reasonable doubt that appellant placed her child in imminent danger of bodily injury or physical impairment.

*Id.* at 689-90.

Comparing the evidence in this case to other assault cases, particularly the facts in *Garcia*, I am unwilling to hold that the inability to take a deep breath, on its own, amounts to bodily injury.[3] *See id.* at 688 ("At most, the record shows that the child was shivering and had blue lips, which would signify that she was very cold, but she was not crying or otherwise exhibiting any signs of pain or impairment."). The State established the enhancement allegations to be sure (that

---

[3] I find some irony in the majority's statement—made while determining that Marshall suffered egregious harm as a result of the jury charge error, a holding with which I strongly agree—that "we cannot conclude with the requisite level of confidence that the jury would have found bodily injury if that element had been properly included in the application paragraph of the charge." Slip op. at 17.

5

Shawne was a family member and that Marshall impeded her normal breathing), but there is no evidence that Marshall caused Shawne bodily injury when he used the pillow to impede her normal breathing.[4]  And, importantly, the jury was not asked whether she suffered bodily injury.

I would sustain Marshall's first issue, hold that the evidence is legally insufficient to support the conviction for assault–family violence by suffocation under section 22.01(b)(2)(B) of the penal code, and render a judgment of acquittal on that charge.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Filed:   April 3, 2014

Do Not Publish

---

[4]  In the portion of its brief answering Marshall's sufficiency argument, the State does not argue that there was evidence of bodily injury as a result of Marshall holding the pillow over Shawne's face and erroneously states, "Even in this appeal, Marshall's point of error for legal insufficiency concerns impeding normal breath; it doesn't contend there was no evidence of bodily injury."  However, Marshall's point of error related to evidentiary sufficiency does argue a lack of evidence of bodily injury.  He states in the introductory paragraph, "No evidence was admitted to show that Appellant 'impeded the normal breathing or circulation of the blood' of Shawne, a necessary element of third degree assault as alleged. *There was no evidence to show bodily injury caused by his use of the pillow, an element required by a hypothetically correct jury charge*." (Emphasis added.)  And, after he fully fleshes out his argument against the impeding of breathing element, he goes on to say that there are two "main elemental components to third degree felony assault"—the "forbidden conduct," impeding a person's breathing, and the "required result," bodily injury.  He goes on to say that although there was evidence that Shawne was injured in the overall assault, those injuries were caused by other acts and "there was no evidence to show these injuries were caused by [Marshall's] use of the pillow," and that "[n]o rational juror could have found the essential elements of either the 'forbidden conduct' or the 'required result' proven beyond reasonable doubt."